IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HETRONIC INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-14-787-C |
| ) | |
| TORSTEN REMPE, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| TORSTEN REMPE, ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| HETRONIC INTERNATIONAL, INC., ) | |
| and METHODE ELECTRONICS, INC., ) | |
| ) | |
| Counterclaim-defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff is Hetronic International, Inc. ("Hetronic"), a Delaware corporation that conducts business in the transportation, energy, electronics, and manufacturing industries. Its principal place of business is Oklahoma City. Hetronic is a subsidiary of Methode Electronics, Inc. ("Methode"). Methode is a publicly traded company; Hetronic is not. Defendant was president of Hetronic until September 2013. In November 2013, Defendant incorporated a new business, AZ Control Solutions, Inc. During Defendant's employment as president, Hetronic had contracts with several German companies (the "Fuchs

Companies") for the distribution and assembly of Hetronic products. Hetronic terminated those contracts and filed suit against the Fuchs Companies in June 2014 after discovering the Fuchs Companies allegedly were engaged in a scheme to compete with Hetronic, which included selling Hetronic systems independently and placing Hetronic's name on counterfeit parts. Hetronic filed this lawsuit in July 2014, alleging, in part, that Defendant assisted the Fuchs Companies in this scheme and that Defendant planned to use AZ Control Solutions, Inc., as the North American distributor for the Fuchs Companies. In the Answer (Dkt. No. 28), Defendant denies liability for Hetronic's claims and asserts the following five counterclaims against Hetronic and Methode: two claims of wrongful termination arising out of fraudulent transactions and consumer fraud; slander; tortious interference with prospective economic relations; and abuse of process. Hetronic and Methode now seek dismissal of all Defendant's counterclaims for failure to state a claim upon which relief may granted pursuant to Fed. R. Civ. P. 26(b). (Mot. to Dismiss Countercls., Dkt. No. 38.) Defendant has filed a Response (Dkt. No. 40). Hetronic and Methode have filed a Reply (Dkt. No. 42). The motion is at issue.

## II. STANDARD OF REVIEW

The Supreme Court has made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal citations omitted). At the dismissal stage, the Court will accept all of the claimant's well-pleaded factual allegations as true and view them in the light most favorable to the claimant. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). However, "conclusory allegations that lack 'supporting factual averments are insufficient to state . . . claim[s] on which relief can be based.'" In re Marsden, 99 F. App'x 862, 866 (10th Cir. 2004) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)). Dismissal is appropriate when the allegations in the complaint, treated as true, cannot "raise a claim of entitlement to relief." Twombly, 550 U.S. at 558.

### III. ANALYSIS

A. Wrongful Termination

Employers generally may terminate at-will employees with or without cause at any time and without incurring any liability. Burk v. K-Mart Corp., 1989 OK 22, ¶ 5, 770 P.2d 24, 26. However, this standard is not without exception. Oklahoma law recognizes an actionable Burk tort "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Id., ¶ 19, at 29. This tort also offers protection for both "**internal** and **external** reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination." Darrow v. Integris Health, Inc.,

3

2008 OK 1, ¶ 19, 176 P.3d 1204, 1215 (citing Barker v. State Ins. Fund, 2001 OK 94, ¶ 16, 40 P.3d 463, 465). A Burk tort, "is unique: it applies to only a narrow class of cases and it must be tightly circumscribed." Barker, 2001 OK 94, ¶ 14, 40 P.3d at 468 (citing Burk, 1989 OK 22, ¶¶ 21-22, 770 P.2d at 29). To assert a viable Burk claim, Defendant must allege the following:

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

Vasek v. Bd. of Cnty. Comm'rs of Noble Cnty., 2008 OK 35, ¶ 14, 186 P.3d 928, 932. Hetronic and Methode argue that Defendant's Burk claims must be dismissed because they do not fit in the "narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." Burk, 1989 OK 22, ¶ 17, 770 P.2d at 28. Public policy is a judicial determination. Pearson v. Hope Lumber & Supply Co., Inc., 1991 OK 112, ¶ 5, 820 P.2d 443, 444.

    1.    In Counterclaim I, Defendant asserts he was fired because he refused to sign inaccurate quarterly financial reports and internally reported concerns regarding inaccurate accounting in Hetronic's Philippines division. (Answer, Dkt. No. 28, at 27-35.) Defendant argues his actions are protected pursuant to 21 Okla. Stat. §§ 1635 and 1636 and that

4

termination based on these actions is a violation of Oklahoma's public policy.[1] These criminal statutes prohibit the falsification of corporate records and apply to corporations "carrying on business, or keeping an officer thereof," in Oklahoma. 21 Okla. Stat. §§ 1635, 1636 & 1644. "It is public policy in Oklahoma and everywhere to encourage the disclosure of criminal activity." Lachman v. Sperry-Sun Well Surveying Co., 457 F.2d 850, 853 (10th Cir. 1972). However, not every "employee allegation of illegal or unsafe employer's activity will withstand scrutiny in light of Burk." Darrow, 2008 OK 1, ¶ 20, 176 P.3d at 1216. In Hayes v. Eateries, Inc., 1995 OK 108, 905 P.2d 778, the Oklahoma Supreme Court held that an employee who was fired after reporting a co-employee's embezzlement did not have a viable Burk claim. "[T]he situation involve[d] only the private or proprietary interests of the employer-employee relationship, not the direct interests of the general public as where the reporting involves the criminal wrongdoing of the employer or a co-employee perpetrated against the interests of the general public." Id., ¶ 24, at 786. The Oklahoma Supreme Court

---

[1] Pursuant to 21 Okla. Stat. § 1635:
  Any director, officer, agent or member of any corporation or joint stock association, who, with intent to defraud, destroys, alters, mutilates or falsifies any of the books, papers, writings or securities belonging to such corporation or association, or makes or concurs in making any false entry, or omits or concurs in omitting to make any material entry in any book of accounts, or other record or document kept by such corporation or association, shall be guilty of a felony.

Pursuant to 21 Okla. Stat. § 1636:
  Any director, officer or agent of any corporation or joint-stock association, who knowingly concurs in the making, or publishes any written report, exhibit or statement of its affairs or pecuniary condition, containing any material statement which is false . . . or willfully refuses or neglects to make or deliver any written report, exhibit or statement required by law, is guilty of a misdemeanor.

distinguished the circumstances in Hayes from those situations where "the employee is terminated for seeking to vindicate his **own** legal rights or interests" or where the employee is "seeking to vindicate a public wrong where the victim of the crime could in any real or direct sense be said to be the general public." Id., ¶¶ 23-24, at 786. The Oklahoma Supreme Court addressed this issue again in Darrow, 2008 OK 1, 176 P.3d 1204. In Darrow, a home health care agency employee was terminated after internally reporting possible Medicare fraud. Id., ¶¶ 2-5, at 1207-08. The Oklahoma Supreme Court distinguished Darrow from Hayes, finding that the fiscal integrity of home health care agencies implicated a "pervasive public interest." Id., ¶¶ 17-20, at 1215-16. The employee's reports dealt with allegations of the falsification of documents in violation of 21 Okla. Stat. § 1589, which criminalizes the making of false entries in corporate books of accounts. See Darrow, ¶ 18, at 1215. The court held that "[p]roviding legal recourse to an employee who asserts he was discharged for reporting violations of Oklahoma's criminal law where the public interest is so closely entwined clearly gives rise to a mandate of public policy on which a Burk claim may be rested." Id. In the instant case, Defendant internally reported acts that allegedly violate 21 Okla. Stat. §§ 1635 and 1636. Defendant's allegations that Methode would use the inaccurate quarterly reports in its public SEC reporting and that shareholders would rely on the reports implicate a matter of public interest. Thus, Defendant's allegations sufficiently state a mandate of public policy on which a Burk claim may rest. Furthermore, Defendant's allegation that he was fired for refusing to sign the inaccurate reports could support a finding that Defendant was "seeking to vindicate his **own** legal rights or interests." Hayes, 1995 OK

6

108, ¶ 23, 905 P.2d at 786. Although the Oklahoma Court of Civil Appeals case <u>Gabler v. Holder & Smith, Inc.</u>, 2000 OK CIV APP 107, 11 P.3d 1269, is not binding precedent pursuant to 20 Okla. Stat. § 30.5, the Court finds it persuasive. The plaintiff, Gabler, alleged he was fired, in part, because he reported his employer kept two sets of corporate records. <u>Id.</u>, ¶ 40, at 1277. The court held that Gabler, as former vice president, "could be found to be seeking to protect his own interests" and thus was protected under the <u>Burk</u> rule because "[e]ven concurring in falsification of corporate records may make a corporate officer criminally liable" under 21 Okla. Stat. §§ 1635 and 1636. <u>Id.</u>, ¶ 46, at 1278. Based on the reasoning above, Defendant's actions in refusing to sign the inaccurate corporate records and in reporting the accounting errors are protected under the <u>Burk</u> rule.

Hetronic and Methode have provided no case law supporting their argument that Counterclaim I must be dismissed because Defendant failed to plead "materiality" or "scienter." 21 Okla. Stat. §§ 1635, 1636. Neither <u>Darrow</u> nor <u>Gabler</u> held that an employee must plead every element of the statute cited as the basis for public policy. <u>See</u> <u>Darrow</u>, 2008 OK 1, ¶ 18, 16 P.3d at 1215 (holding that Darrow's whistleblowing would be protected activity based on 21 Okla. Stat. § 1589 without addressing whether Darrow pleaded the elements of that statute, which include scienter); <u>see also</u> <u>Gabler</u>, 2000 OK CIV APP 107, ¶ 46, 11 P.3d at 1278 (holding that Gabler's whistleblowing was protected based on 21 Okla. Stat. §§ 1635 and 1636 without addressing whether Gabler had sufficiently pleaded the elements thereof).

Hetronic and Methode argue Counterclaim I must be dismissed because 21 Okla. Stat. §§ 1635 and 1636 do not "touch any aspect of the employment relationship." Pearson, 1991 OK 112, ¶ 7, 820 P.2d at 445; Shero v. Grand Sav. Bank, 2007 OK 24, ¶¶ 10-11, 161 P.3d 298, 301; Rogers v. Alezopulos, No. CIV-11-1140-C, 2012 WL 1232007, at *3 (W.D. Okla. April 12, 2012). However, Pearson, Shero, and Rogers all deal with civil statutes and "are not applicable [when] dealing with matters of importance to the general public." Darrow, 2008 OK 1, ¶ 16, n.45, 176 P.3d at 1214, n.45; see Hayes, 1995 OK 108, ¶ 24, 905 P.2d at 787 (holding that Hayes' whistleblowing was not protected by public policy because the situation did not involve "the direct interests of the general public as where the reporting involves the criminal wrongdoing of the employer or a co-employee perpetrated against the interests of the general public").

Hetronic and Methode also argue that the Dodd-Frank Wall Street Reform and Consumer Protection Act and the Sarbanes-Oxley Act provide adequate remedies. 15 U.S.C. § 78u-6(h)(1)(A)(iii); 18 U.S.C. § 1514A(b)(1)(A)-(B). Defendant cannot maintain a viable Burk claim if a "statutory remedy exists that is adequate to protect the Oklahoma policy goal." Vasek, 2008 OK 35, ¶ 14, 186 P.3d at 932. Whether a remedy is "adequate" is a "question[] of law to be resolved by the court." McCrady v. Okla. Dep't of Pub. Safety, 2005 OK 67, ¶ 9, 122 P.3d 473, 475. However, the Court lacks the facts necessary to make such a determination at this stage in the proceedings.

The last issue to address is whether Defendant may assert a wrongful termination claim against both Hetronic and Methode. Under Oklahoma law, Burk claims can "only be

asserted against an employer." Tesh v. U.S. Postal Serv., 215 F. Supp. 2d 1220, 1229 (N.D. Okla. 2002) (citing Burk, 1989 OK 22, ¶ 17, 770 P.2d at 28). In his Counterclaim, Defendant refers to "his superiors at Methode" and alleges that both Methode and Hetronic terminated his employment. (Answer, Dkt. No. 28, at 32-35.) Because the Court must accept all of Defendant's well-pleaded factual allegations as true at the dismissal stage, these allegations are sufficient to state claims of wrongful termination against both Hetronic and Methode. See Alvarado, 493 F.3 at 1215. Defendant's argument that Methode may be held liable for the negligent conduct of its subsidiary is irrelevant as wrongful termination is not a negligence claim. Thus, Defendant has sufficiently stated a claim of wrongful termination in Counterclaim I against both Hetronic and Methode.

2. In Counterclaim II, Defendant asserts he was fired because he refused to sell magneto elastic sensors using false representations that the sensors were a proprietary and patented product of Hetronic and because he internally reported concerns regarding the false representations. (Answer, Dkt. No. 28, at 27-35.) Defendant cites the Oklahoma Consumer Protection Act, 15 Okla. Stat. § 751, *et seq.*, as the public policy basis for Counterclaim II.[2]

---

[2] 15 Okla. Stat. § 753(20) prohibits a person, in the course of business, from committing "an unfair or deceptive trade practice," which includes "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." 15 Okla. Stat. § 752.

15 Okla. Stat. § 753(2),(3) & (7) further prohibit the following:

> 2. Maki[ing] a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;

Bearing in mind that Burk torts must be "tightly circumscribed," the Court is not persuaded the Consumer Protection Act articulates "a clear mandate of public policy" against termination of an at-will employee under these circumstances. Burk, 1989 OK 22, ¶ 17, 770 P.2d at 28. Oklahoma courts have recognized Burk torts where the employee was fired for "seeking to vindicate a public wrong where the victim of the crime . . . [is] the general public." Hayes, 1995 OK 108, ¶¶ 23-24, 905 P.2d at 786; see e.g. Darrow, 2008 OK 1, 176 P.3d 1204 (recognizing a mandate of public policy in circumstances where a violation of criminal law was "entwined" with the public interest in the fiscal integrity of home health care agencies). However, Defendant does not allege any harm, actual or possible, to the general public, and the Court was unable to find any Oklahoma case law recognizing that the Consumer Protection Act may support a Burk tort. Based on the reasoning above, Defendant's allegations do not sufficiently state a claim of wrongful termination. Counterclaim II must be dismissed.

B.  Counterclaim III—Slander

Defendant alleges that "Hetronic employees and Methode executives" have made slanderous statements "to others in the same industry and to potential customers of Rempe that Rempe mismanaged Hetronic, made misrepresentations to customers and was generally

---

3. Mak[ing] a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another;

7. Represent[ing], knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another.

incompetent." (Answer, Dkt. No. 28, at 35.) Slander—one of the two categories of defamation—can be a false statement that injures a person's reputation in respect to his office, profession, trade, or business. 12 Okla. Stat. §§ 1141, 1442(3). To assert a viable claim of defamation, Defendant must plead:

> "(1) a false and defamatory statement concerning [Defendant]; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication."

Cardtoons, L.C. v. Major League Baseball Players Ass'n, 335 F.3d 1161, 1166 (10th Cir. 2003) (citation omitted).

Defendant has failed to plead sufficient facts to support this claim. Defendant does not allege the statements are false, asserting only that Hetronic and Methode have "slandered" his reputation. This statement is conclusory, and the term "slander" does not automatically interject an allegation of falsity. Defendant's assertion that this Court has "'assumed' [falsity] for purposes of the motion to dismiss" is inaccurate and not persuasive. (Def.'s Resp., Dkt. No. 40, at 14 n.6.) In Zagorsky v. McAdam, No. CIV-13-1209-D, 2014 WL 2982669 (W.D. Okla., July 1, 2014), the Court held that, "even assuming" the statement was false and defamatory, the plaintiff had still failed to state a plausible claim for relief. Defendant's allegations provide no indication as to when these statements were made, and Defendant has failed to allege the identity of both the persons making and receiving the statements. Id. at *6 ("The allegations fail to identify to whom and when any of the emails and oral statements were sent or made. Thus, Plaintiff has failed to state a plausible claim for

relief for defamation."). Furthermore, Defendant does not state whether the statements were spoken or communicated through some other medium. "[I]n the context of a defamation claim, Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of to allow [Hetronic and Methode] to defend [themselves]." McGeorge v. Cont'l Airlines, Inc., 871 F.2d 952, 955-56 (10th Cir. 1989) (citing Liguori v. Alexander, 495 F.Supp. 641, 647 (S.D.N.Y. 1980); 12 Okla. Stat. § 1444.1). Defendant's pleading does not do so. Furthermore, Defendant's pleading is bare of any allegation of fault. Defendant's allegations accepted as true cannot state a claim upon which relief may be granted. Thus, Counterclaim III—Slander must be dismissed.

C.  Tortious Interference with Prospective Economic Relations

Defendant alleges that Methode has encouraged employees to inform Defendant's prospective customers about the instant case "in order to discourage these customers from ordering products from Rempe." (Answer, Dkt. No. 28, at 36.) Defendant asserts that this and the allegedly slanderous statements discussed previously have tortiously interfered with a "reasonable expectation of economic relations with these customers." (Id. at 37.) To state a claim for interference with prospective business relations, Defendant must plead:

> (1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) an intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted.

Cohlmia v. St. John Med. Ctr., 693 F.3d 1269, 1286-87 (10th Cir. 2012) (citing Boyle Servs., Inc. v. Dewberry Design Grp., Inc., 2001 OK CIV APP 63, ¶ 6, 24 P.3d 878, 880).

Having carefully reviewed Defendant's pleading, the Court finds Defendant has failed to set forth sufficient factual allegations to state a claim of tortious interference with prospective business relations. Defendant has provided no specific factual allegations supporting the conclusory allegation that Defendant had "a reasonable expectation of economic relations" with the prospective customers. (Answer, Dkt. No. 28, at 36-37.) "To show the existence of a valid business relationship or expectancy, '[Defendant] must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof.'" Optima Oil & Gas Co., LLC v. Mewbourne Oil Co., No. CIV-09-145-C, 2009 WL 1773198, at *8 (W.D. Okla. June 22, 2009) (quoting Crystal Gas Co. v. Okla. Natural Gas Co., 1974 OK 34, ¶ 25, 529 P.2d 987, 990) (internal quotation marks and citation omitted). The pleading contains no allegations showing Defendant had a "reasonable assurance" of obtaining the prospective business relations. Neither does Defendant identify which prospective customer relationships were interfered with or how the actions of Hetronic and Methode caused the interference. North Am. Ins. Agency, Inc. v. Bates, No. CIV-12-544-M, 2013 WL 6150781, at *11 (W.D. Okla. Nov. 22, 2013). Thus, Defendant's allegations, accepted as true, cannot support finding "the existence of a valid business relation or expectancy." Cohlmia, 693 F.3d at 1287. Counterclaim IV—Tortious Interference with Prospective Economic Relations must be dismissed.[3]

---

[3] Hetronic and Methode argue that Defendant's tortious interference counterclaim should be dismissed because Defendant cannot personally sue for alleged injury to a corporation and thus

D. Abuse of Process

To sufficiently state a claim of abuse of process, Defendant must plead: "(1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the [party] asserting the misuse." Greenberg v. Wolfberg, 1994 OK 147, ¶ 22, 890 P.2d 895, 905 (footnote omitted). The essence of the tort of abuse of process is "not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." Heck v. Humphrey, 512 U.S. 477, 485 n.5 (1994).

Defendant alleges that Hetronic and Methode, through their actions in the instant lawsuit and in a separate lawsuit to which Defendant is not a party, have abused the process of the Court. The Court will focus solely on Hetronic's and Methode's actions in the instant case because actions occurring in proceedings independent of "the *specific* proceeding relied upon to assert the abuse-of-process claim" cannot state a claim of abuse of process. See Greenberg, ¶ 23, at 905 ("Nonetheless, unless a court's process has been *misused* or *misapplied* in the *specific* proceeding relied upon to assert the abuse-of-process claim, the delict is not maintainable."). Defendant alleges that Hetronic and Methode seek the improper objectives of pressuring Defendant to (1) not compete with Hetronic and (2) agree to testify favorably in Hetronic's pending lawsuit against the Fuchs Companies. (Answer, Dkt. No. 28, at 36-43.) The first objective cannot state a claim for abuse of process. In the Amended

---

lacks standing. The true issue is whether Defendant is the real party in interest. Fed. R. Civ. P. 17. As this does not implicate a question of the Court's jurisdiction, the Court declines to address the issue because Defendant's counterclaim is dismissible on other grounds.

Complaint (Dkt. No. 27), Hetronic alleges that Defendant breached a non-compete clause in the employment contract. Hetronic's requested relief includes compensatory damages and an injunction that would bar Defendant "from using Hetronic's confidential information to compete with it." (Id. at 33.) Therefore, forcing Defendant to not compete with Hetronic is a "'lawfully obtainable'" objective of the instant lawsuit and cannot constitute an "'improper purpose.'" See Meyers v. Ideal Basic Indus., Inc., 940 F.2d 1379, 1383 (10th Cir. 1991) (quoting Houghton v. Foremost Fin. Servs. Corp., 724 F.2d 112, 116 (10th Cir. 1983) ("'Abuse of process occurs when legal process is used for an improper purpose, to accomplish an end not lawfully obtainable, or to compel someone to do some collateral thing he could not be legally compelled to do.'"))

Defendant alleges that Hetronic and Methode sought these objectives through the following "improper use[s] of the court's process": (1) filing the instant lawsuit; (2) completing service of process; (3) maintaining the instant lawsuit; (4) offering to dismiss the lawsuit; (5) "interrogat[ing]" Defendant for three hours about the Fuchs Companies during a witness interview; and (6) threatening that it would be "World War III" if Defendant filed a counterclaim. (Answer, Dkt. No. 28, at 36-43.)

Defendant asserts that filing the instant lawsuit constitutes abuse of process because the lawsuit "lacked any merit." (Id. at 40.) Allegations that a lawsuit was wrongfully brought may state a claim for malicious prosecution, not abuse of process. Stoller v. Funk, No. CIV-11-294-C, 2012 WL 1952255, at *1 (W.D. Okla. May 30, 2012) (citing Greenberg, ¶ 25, 906). Abuse of process claims are reserved for "*perversion* of the process *after* it is

issued." Greenberg, ¶ 25, 906. As a matter of law, Defendant presently cannot maintain a claim of malicious prosecution because "the party asserting that claim must have the action terminated in their favor." Stoller, 2012 WL 1952255, at *1 (citing Greenberg, 1994 OK 147, ¶ 14, 890 P.2d at 901-902). The other alleged actions of Hetronic and Methode are not "processes" anticipated within the tort of abuse of process. "The word '*process*,' . . . encompasses the entire range of procedures incident to the litigation process." Greenberg, 1994 OK 147, ¶ 22, 890 P.2d at 905 n.47 (citing Nienstedt v. Wetzel, 133 Ariz. 348, ¶ 11, 651 P.2d 876, 880 (1982)). The Arizona Supreme Court case cited defines "processes" as "the noticing of depositions, the entry of defaults, and the utilization of various motions such as motions to compel production, for protective orders, for change of judge, for sanctions and for continuances." Nienstedt, 133 Ariz. 348, ¶ 11, 651 P.2d at 880-81. None of the alleged actions fit within this definition. Furthermore, "[i]mproper use means a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.'" Marlin Oil Corp. v. Barby Energy Corp., 2002 OK CIV APP 92, ¶ 13, 55 P.3d 446, 450 (quoting Tulsa Radiology Assocs., Inc. v. Hickman, 1984 OK CIV APP 11, 683 P.2d 537, 539). Defendant does not allege that Hetronic and Methode have done anything "'more than carry out the process to its authorized conclusion.'" Id. Such actions, even if done with "bad intentions," cannot constitute "improper use." Id. Thus, Defendant's allegations do not sufficiently state a claim of abuse of process; Counterclaim V must be dismissed.

## IV. CONCLUSION

Accordingly, Hetronic International, Inc.'s and Methode Electronics, Inc.'s Motion to Dismiss Counterclaims (Doc. No. 38) is GRANTED IN PART and DENIED IN PART. Defendant has sufficiently stated a claim for relief in Counterclaim I. Counterclaims II, III, IV, and V are dismissed. If Defendant wishes to amend, that pleading must be filed within 20 days of the date of this Order.

IT IS SO ORDERED this 9th day of April, 2015.

ROBIN J. CAUTHRON
United States District Judge